IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN V.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:18-cv-02083-HZ

OPINION & ORDER

Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

James W. Moller
P.O. Box 1368
Wilsonville, OR 97070

    Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Diana Swisher Andsager
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Kevin V. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

       Plaintiff applied for DIB and SSI on April 13, 2015, alleging an onset date of August 31, 2005. Tr. 14.[2] Plaintiff's date last insured is March 31, 2008. His application was denied initially and on reconsideration. *Id*.

       On February 22, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). *Id*. At the hearing, Plaintiff amended his alleged onset date to April 13, 2015, and withdrew his claim for DIB benefits. *Id*. On March 19, 2018, the ALJ found Plaintiff not disabled and denied Plaintiff's application for SSI benefits. Tr. 21. The Appeals Council denied review. Tr. 1.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, Docket No. 7.

2 – OPINION & ORDER

## FACTUAL BACKGROUND

Plaintiff alleges disability based on arthritis and high blood pressure. Tr. 229. On his amended alleged onset date, he was 55 years old. Tr. 17, 261. Plaintiff has a high school education with some college and past relevant work experience as a kitchen helper/dishwasher and fast food worker/supervisor. Tr. 20, 31.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets [his/her] burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his amended alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "Arthritis in the Right and Left Hip; Bilateral Knee Osteoarthritis (Left Knee Degenerative Joint Disease (DJD)); Morbid Obesity and Hypertension." *Id*. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id*. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform less than the full range of medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations: "[M]ay no more than frequently climb ladders and stairs. The claimant can no more than frequently balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to workplace hazards." Tr. 18. Despite those limitations, the ALJ concluded that Plaintiff could perform his past relevant

work as a kitchen helper/dishwasher and fast food worker/supervisor. Tr. 20. The ALJ also determined that there are additional jobs that exist in significant numbers in the national economy that Plaintiff can perform within his limitations, including "Store Laborer . . . Hand Packager . . . and Laundry Worker II." Tr. 21. Thus, the ALJ concluded that Plaintiff is not disabled. *Id*.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

///

///

///

///

**DISCUSSION**

Plaintiff alleges that the ALJ erred in evaluating his subjective symptom testimony and the medical opinion testimony. The Court finds no error in the ALJ's assessment of Plaintiff's subjective symptoms testimony and finds that the ALJ erred in assigning weight to the medical opinions.

**A.  Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective symptom testimony. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, then the Court will not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ did not find that Plaintiff was malingering, so the ALJ was required to articulate clear and convincing reasons to discount Plaintiff's testimony. *Smolen*, 80 F.3d at 1281. The ALJ discounted Plaintiff's subjective symptom testimony because he received only conservative treatment, did not have significant side effects from his medications, and had not been

hospitalized for his conditions. Tr. 19. The ALJ also noted that Plaintiff refused to use an assistive device for walking and that, although he had ongoing problems with hypertension, it was improving. *Id*. Each of those are clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

        i.   *Conservative Treatment*

A history of only conservative medical treatment and the absence of medication side effects may constitute clear and convincing reasons to discount a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (It was not error for ALJ to infer from the plaintiff's failure to seek a more aggressive treatment plan after discontinuing a medication due to mild side effects that the plaintiff's pain and symptoms were "not as all-disabling as he reported."); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the ALJ may consider the effectiveness or adverse side effects of a medication in making the credibility determination). The treatment records demonstrate that Plaintiff managed his arthritis and hypertension symptoms during office visits with his doctors and by taking anti-inflammatory and blood pressure medications without experiencing any side effects. *See, e.g.*, Tr. 382-415.

Plaintiff argues that he did not seek more aggressive treatment for his arthritis because no such treatment was recommended by his treating physicians. Pl. Br. 16, ECF 12. Specifically, Plaintiff argues that the ALJ failed to consider that Dr. Shapiro, an orthopedic surgeon who saw Plaintiff two years before his alleged onset date, told Plaintiff to treat his arthritis conservatively. Tr. 283. Medical treatment notes from before the claimant alleges to have become disabled are of limited probative value. *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predated the alleged onset of disability are of limited relevance.") (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)). Dr. Shapiro recommended anti-inflammatories, heat,

ice, weight loss, and low-impact exercise and concluded that Plaintiff was not eligible for physical therapy or surgery. *Id*. Dr. Shapiro's conservative treatment recommendation two years before Plaintiff allegedly became disabled does not undermine the ALJ's conclusion that Plaintiff's conservative care suggested that his symptoms were less severe than he alleged. As a result, the ALJ did not err in discounting Plaintiff's subjective symptom testimony due to his conservative treatment.

After his alleged onset date, Plaintiff's providers continued to recommend only conservative treatment in the form of activity modification and anti-inflammatory medications to treat his arthritis. Tr. 286-87, 292, 335, 384, 387, 400. For his high blood pressure, Plaintiff's providers recommended various combinations of hypertension medications. *See, e.g.*, Tr. 306-09, 327-29, 332, 387. Plaintiff consistently reported that ibuprofen helped his pain and that he did not have any symptoms associated with his chronic high blood pressure. *See, e.g.,* Tr. 383, 392, 400, 402-04. Contrary to Plaintiff's assertion, that evidence does not detract from—it supports— the ALJ's conclusion that Plaintiff did not suffer from significant symptoms and physical limitations due to his severe impairments.

In support of her conclusion that Plaintiff's hypertension was improving, the ALJ cited a September 2017 emergency room visit at which Plaintiff complained of dizziness and high blood sugar. Tr. 406. During that visit, his blood pressure was 116/75. Tr. 407. At previous doctor visits, however, Plaintiff's blood pressure was significantly elevated despite taking blood pressure medications. *See, e.g.,* Tr. 340 (blood pressure of 180/110); Tr. 404 (documenting blood pressure readings of 190/110 and 186/114); Tr. 692 (documenting blood pressure of 164/116); Tr. 389 (documenting blood pressure of 168/118); Tr. 385 (documenting blood pressure of 150/110). Thus, the September 2017 emergency room visit reflects an improvement in his blood

8 – OPINION & ORDER

pressure as compared to his blood pressure recorded at prior visits. Other than experiencing headaches when he quit taking his blood pressure medications, Plaintiff consistently denied having any other symptoms associated with his elevated blood pressure. Tr. 328, 332, 383, 390, 392-94.

The ALJ's conclusion that Plaintiff's symptoms are less severe than he alleged is thus supported by substantial evidence in the record. The record demonstrates both that Plaintiff failed to seek a more aggressive treatment regimen for his arthritis and that his providers did not recommend additional treatment beyond ibuprofen and an assistive walking device, which Plaintiff declined to use, to treat his arthritis. The record also reflects Plaintiff's consistent reports that he did not have symptoms associated with his hypertension that would interfere with his ability to perform work-related activities. As a result, the ALJ did not err by discounting Plaintiff's subjective symptom testimony on the basis that he received only conservative treatment.

  ii. *Assistive Device*

The ALJ also discounted Plaintiff's testimony because he refused to use an assistive device for walking. Tr. 19 (citing Tr. 403). A claimant's failure to follow recommended treatment is a clear and convincing reason to discount the claimant's testimony. *Molina*, 674 F.3d at 1113. The reason that Plaintiff refused an assistive device is not documented in the record.[3] It was reasonable for the ALJ to conclude based on Plaintiff's refusal to use an assistive

---

[3] Plaintiff argues that he refused an assistive device because using a cane or similar device was not feasible for him because he lives in a shelter. That may be true, but there was no evidence in the record before the ALJ that documented that explanation. Although the ALJ may not reject Plaintiff's symptom testimony for failing to follow recommended treatment if Plaintiff provided a good reason for not doing so, *Smolen*, 80 F.3d at 1284, the ALJ cannot be faulted for failing to consider a reason that was not in the record before her.

9 – OPINION & ORDER

device that his arthritis symptoms are less severe than he alleged. As a result, the ALJ did not err by discounting Plaintiff's subjective symptom testimony due to his rejection of an assistive device. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.).

The Court rejects Plaintiff's argument that his refusal to use an assistive device was not a failure to follow prescribed treatment. Plaintiff argues that because "there is no reason to think that the unspecified walking assistance device was intended as a treatment," the ALJ should not have discounted his testimony for declining to use one.[4] The Court disagrees. Plaintiff reported that he was unable to walk due to his pain and arthritis symptoms, and Dr. Bedward recommended an "assistance device for walking." Tr. 403. The doctor clearly recommended the assistive device to help Plaintiff walk, which would improve his level of functioning. Plaintiff's unexplained failure to accept a device that would help him walk undermined his subjective report that he was unable to walk, and it was proper for the ALJ to consider that when she evaluated his subjective symptom testimony. *See Butner v. Berryhill*, No. 6:16-cv-01737-HZ, 2017 WL 5565673, at *5 (D. Or. Nov. 20, 2017) (Plaintiff's failure to wear a neck brace and exercise regularly was a failure to follow recommended treatment that the ALJ properly considered in discounting the claimant's subjective symptom testimony).

Finally, Plaintiff argues that the ALJ mischaracterized the evidence when she indicated that "the claimant continued to report his arthritis, specifically in his knees." Tr. 19. Based on that statement, Plaintiff argues that the ALJ incorrectly found that Plaintiff complained of arthritis symptoms only in his knees. Pl. Br. 15. However, the ALJ cited records that, in addition

---

[4] To illustrate that argument, Plaintiff contends that a hospitalization is not a treatment, it is a place where treatment is administered. Pl. Br. 17.

to documenting Plaintiff's knee complaints, also documented his right hip and leg pain. *Id*. (citing Tr. 383, 387, 404). The ALJ also relied on an April 2016 record that discusses Plaintiff's right hip complaints with no mention of his knee issues, *id*. (citing Tr. 395), and Plaintiff's August 31, 2017, hip x-ray, which documents his severe right hip arthritis and moderate left hip arthritis, *id*. (citing Tr. 414). Thus, the ALJ did not fail to consider Plaintiff's subjective complaints associated with his hip arthritis.

### B. Medical Opinions

Plaintiff argues that the ALJ erred in assigning weight to the medical opinions of Drs. Jensen, Eder, and Williams. Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). More weight is given to an examining physician than to a non-examining physician. *Id*. at 1012. "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id*. (quoting *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When determining how much weight to give a medical opinion, the ALJ should consider the nature and extent of the physician's examining or treating relationship with the claimant, supportability of the opinion, consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. § 404.1527(c).

#### i. Dr. Jensen's Opinion

Plaintiff first argues that the ALJ erred by giving little weight to state agency reviewing physician Dr. Jensen's opinion. Pl. Br. 17-18. Dr. Jensen did not examine Plaintiff. Tr. 67-74. Dr. Jensen opined that Plaintiff could lift twenty pounds occasionally, lift ten pounds frequently, stand or walk for four hours and sit for six hours in an eight-hour workday, occasionally climb

ramps/stairs, ladders/ropes/scaffolds, kneel, crouch, and crawl, and frequently stoop. Tr. 72-73. With those limitations, Plaintiff could perform less than the full range of light work. Tr. 18. The ALJ gave Dr. Jensen's opinion little weight because it was "not consistent with the records" and with Plaintiff's subjective reports. *Id*.

Dr. Jensen's opinion was contradicted by the opinions of both Drs. Williams and Eder, so the ALJ could reject Dr. Jensen's opinion by providing a specific and legitimate reason supported by substantial evidence in the record. *Garrison*, 759 F.3d at 1012. Inconsistency with the treatment records is a legitimate reason to discount the weight given to a medical opinion. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Plaintiff argues that because the ALJ did not identify which of Plaintiff's treatment records were inconsistent with Dr. Jensen's opinion, the ALJ's conclusion is not supported by substantial evidence. The ALJ should cite to specific evidence in the record when rejecting a non-examining physician's opinion. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). However, the Court may draw specific and legitimate inferences from the ALJ's opinion to determine whether it is supported by substantial evidence, "if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Here, the ALJ did not cite specific treatment records that she relied on to reject Dr. Jensen's opinion. In fact, the only treatment records the ALJ referred to throughout her entire opinion concerning Plaintiff's arthritis, in the ALJ's own words, reflected that "claimant continued to report his arthritis" and that he "refused an assistive device for walking and . . . was getting around by bicycle." Tr. 19. There is no clear inference for the court to draw from the ALJ's cursory review of the records to determine what treatment records the ALJ found inconsistent with Dr. Jensen's opinion. Thus,

inconsistency with the record as a whole was not a specific and legitimate reason for the ALJ to discount the weight she gave to Dr. Jensen's opinion.

The ALJ also rejected Dr. Jensen's opinion because it was inconsistent with Plaintiff's subjective reports. Tr. 18. Again, the ALJ failed to explain which of Plaintiff's subjective reports was inconsistent with Dr. Jensen's opinion. Plaintiff's subjective reports included difficulty sitting, standing, and walking, problems with his legs giving out, pain in both knees and both hips, and constant pain. Tr. 35, 41, 46. Those symptoms are consistent with Dr. Jensen's opinion that Plaintiff is capable of performing less than the full range of light work. As a result, inconsistency with Plaintiff's subjective reports was not a legitimate reason for the ALJ to reject Dr. Jensen's opinion.

      ii. *Dr. Williams's Opinion*

Next, Plaintiff argues that the ALJ erred by assigning great weight to the opinion of Dr. Williams. Dr. Williams conducted a consultative examination of Plaintiff in August 2015. Tr. 338. Dr. Williams based his opinion on his examination and his review of one medical record from May 2013 which described Plaintiff's uncontrolled high blood pressure, left knee bursitis, and the results of Plaintiff's right knee MRI. *Id*. Dr. Williams noted that the medical record described the right knee MRI findings to include "OCD along the medial edge of his lateral tibial plateau, mild chondromalacia of the patella, negative for a meniscal tear and bone marrow edema and increased signal in the articular cartilage." *Id*. Dr. Williams opined that Plaintiff did not have any limitations sitting, could stand and walk six hours a day, lift fifty pounds occasionally and twenty-five pounds frequently, frequently climb ladders, stairs, scaffolds, ropes, stoop, crouch, kneel, and crawl. Tr. 343. With those limitations, Plaintiff could perform a range of medium

work. Tr. 19. The ALJ gave Dr. Williams's opinion great weight because it was consistent with the record as a whole. *Id*.

The ALJ did not cite to any portions of the record to support her conclusion that Dr. Williams's opinion was entitled to great weight because it was consistent with the record. Tr. 18-19. Dr. Williams relied only on a single medical record from May 2013 and his own examination of Plaintiff to render his opinion. As a result, Dr. Williams was unable to consider the other treatment that Plaintiff received in 2013, including his diagnosis of significant bilateral knee osteoarthritis and knee joint space narrowing with meniscal tearing. Tr. 281. Dr. Williams also was unable to consider Plaintiff's later treatment, which included Plaintiff's significant subjective complaints of hip pain and difficulty walking as well as objective findings of moderate to severe arthritis in Plaintiff's hips and knees.[5] *See, e.g.,* Tr. 383, 414. Thus, with only a small piece of Plaintiff's overall condition available to Dr. Williams, the supportability of his opinion is low, even though he examined Plaintiff. The record is inconsistent with Dr. Williams's conclusion that Plaintiff suffered only from knee osteoarthritis and possible patellofemoral syndrome. None of Plaintiff's other physicians diagnosed patellofemoral syndrome, and several of Plaintiff's treating providers documented Plaintiff's hip findings and complaints. As a result, Dr. Williams's opinion is not consistent with the record as a whole, and the ALJ's conclusion to the contrary is not supported by substantial evidence in the record.

    *iii.*    *Dr. Eder's Opinion*

For the same reasons, the ALJ erred in concluding that Dr. Eder's opinion was consistent with the record as a whole. Dr. Eder is a state agency reviewing physician who determined that

---

[5] Although some of that treatment took place after Dr. Williams's evaluation, the ALJ had a duty to develop the record and to resolve conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Smolen*, 80 F.3d at 1288.

Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, stand and walk for six hours in a workday, was not limited in sitting, and could frequently climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl. Tr. 92. With those limitations, Plaintiff could perform a medium range work. Tr. 18. The ALJ gave Dr. Eder's opinion great weight because it was consistent with the record as a whole. *Id*.

      The ALJ did not cite to any specific records in support of her conclusion that Dr. Eder's opinion was consistent with the record. Like Dr. Williams's opinion, Dr. Eder's opinion is inconsistent with the portions of the record that document Plaintiff's significant hip complaints and objective findings. In addition to Dr. Williams's report, Dr. Eder considered three additional records for treatment that Plaintiff received during the twelve days between June 19, 2015, and July 1, 2015. Tr. 87-89. Those records did not document Plaintiff's significant hip complaints and objective findings. Tr. 279-83, 357-81. Instead, those records documented Plaintiff's knee complaints and Plaintiff's hospitalization for appendicitis and gall bladder problems that are unrelated to his disability claim. *Id*. As a result, Dr. Eder's opinion was not supported by the record as a whole, and the ALJ's contrary conclusion is not supported by substantial evidence in the record.

///
///
///
///
///
///
///
///

15 – OPINION & ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: August 31, 2020.

_____
MARCO A. HERNÁNDEZ
United States District Judge